UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, AS SUBROGEE OF THOMAS DOUGHERTY AND DIANE DOUGHERTY, <br><br> Plaintiff, <br><br> v. <br><br> U-LINE CORPORATION and NIDEC MOTOR CORPORATION, <br><br> Defendants. | Civil No. 13-3203 (NLH/AMD) <br><br> **OPINION** |

**APPEARANCES:**

CHRISTOPHER PHILIP LEISE
JARED K. LEVY
WHITE & WILLIAMS, LLP
LIBERTY VIEW
457 HADDONFIELD ROAD
SUITE 400
CHERRY HILL, NJ 08002-2220

    *On behalf of plaintiff*

BERTRAND C. HARRY
STYLIADES, JACKSON & BURGHARDT
10 LAKE CENTER EXECUTIVE PARK
401 ROUTE 73 NORTH
SUITE 310
MARLTON, NJ 08053

    *On behalf of defendant U-Line Corporation*

JOHN MICHAEL KUNSCH
SWEENEY AND SHEEHAN
216 HADDON AVENUE
SUITE 500
WESTMONT, NJ 08108

    *On behalf of defendant Nidec Motor Corporation*

**HILLMAN, District Judge**

I.  **BACKGROUND**

This case concerns a refrigerator/freezer that malfunctioned and released water into a home, owned by Thomas and Diane Dougherty, causing severe property damage.  Plaintiff, Certain Underwriters at Lloyd's, London ("Underwriters"), provided an insurance policy to the Doughertys for the property and made payments under the policy to the Doughertys for their damage.  Underwriters is now prosecuting this case as subrogee of the Doughertys against the "manufacturer/designer/packager" of the refrigerator/freezer for reimbursement due to the defendants' alleged liability.

Defendants, U-Line Corporation and Nidec Motor Corporation, have moved to dismiss Underwriters' complaint, arguing that its claim under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et seq., subsumes its other claims for strict liability, negligence, breach of duty of care, and breach of implied warranty.  Defendants have also moved to dismiss Underwriters' NJPLA and express warranty claims for failure to properly plead those claims in accordance with Fed. R. Civ. P. 8 and the Twombly/Iqbal standard.

For the reasons expressed below, defendants' motion will be granted, but the Court will afford Underwriters thirty days to file an amended complaint consistent with this Opinion.

## II. JURISDICTION

Defendants removed this action from New Jersey state court to this Court. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. The citizenship of the parties is as follows: Plaintiff Certain Underwriters at Lloyd's, London is a group of insurance underwriters incorporated under the laws of the United Kingdom with a principal place of business in London, England; Defendant Nidec Motor Corporation is a Delaware Corporation with its principal place of business in St. Louis, Missouri; and Defendant U-Line Corporation is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.[1]

## III. DISCUSSION

### A. STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v.

---

[1] The citizenship of Underwriter's insureds--subrogors Thomas and Diane Dougherty--is not considered for purposes of diversity jurisdiction. Fidelity and Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc., ---F. Supp. 2d ---, 2013 WL 1288184, 12 n.1 (D.N.J. 2013) (citing Fallat v. Gouran, 220 F.2d 325, 326 (3d Cir. 1955); City of New Orleans v. Whitney, 138 U.S. 595 (1891)).

Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

   A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before

4

Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that

5

no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**B.   ANALYSIS**

  **1.   Subsumption under the NJPLA**

Underwriters has asserted claims against defendants for the violation of the NJPLA, and for strict liability, negligence, breach of duty of care, and breach of the express and implied warranties.  Defendants argue that all of Underwriters' claims, except for its breach of express warranty claim, are subsumed

under the NJPLA because the Act constitutes the exclusive remedy for claims arising out of a defective product under New Jersey law.  Underwriters argues that its claims for the damage to the refrigerator/freezer itself, as well as for compensation for the Doughertys' loss of use of their home, are not subsumed by the NJPLA and all of its claims must stand.

The Court finds that, as pleaded in its current complaint, Underwriters has stated a standard product liability claim which is covered by the NJPLA.  As such, the NJPLA claim subsumes all of its other claims, except for its claim for a breach of express warranty.

The NJPLA was enacted by the New Jersey Legislature in 1987 "based on an 'urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products.'"  Sinclair v. Merck & Co., Inc., 948 A.2d 587, 593 (N.J. 2008) (citing N.J.S.A. 2A:58C-1(a)).  In 2007, the New Jersey Supreme Court set forth substantive guidance regarding the scope of the NJPLA and explicitly recognized that "'[w]ith the passage of the Product Liability Act, . . . there came to be one unified, statutorily defined theory of recovery for harm caused by a product.'"  In Re Lead Paint Litigation, 924 A.2d 484, 503 (N.J. 2007) (citation omitted).  The New Jersey Supreme Court also observed that "[t]he language chosen by the Legislature in enacting the PLA [was] both

7

expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." Id. (citing N.J.S.A. 2A:58C-1(b)(3)).

A product liability action is statutorily defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). The NJPLA further defines the type of "harm" caused by a product to include the following: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. 2A:58C-1(b)(2). Thus, regardless of the underlying legal theory advanced by a plaintiff, the NJPLA is the exclusive method to prosecute a claim for physical harm caused by a product, where that harm is claimed to be caused by a manufacturing defect, a design defect, or a failure for the product to contain adequate warnings or instructions. Koruba v. American Honda Motor Co., Inc., 935 A.2d 787, 795 (N.J. Super. Ct. App. 2007); N.J.S.A. 2A:58C-2.

Here, Underwriters asserts, in each of its claims, that "Defendants, U-Line and/or Nidec, manufactured, designed and/or

packaged the refrigerator/freezer within the residence at 9 Grenada Lane, Ocean City, New Jersey," and "the malfunction of the refrigerator/freezer was the direct and proximate result of the defective manufacturing, design and/or packaging of the refrigerator/freezer by Defendants U-Line and/or Nidec, which malfunction caused the water discharge at the Premises."  (Compl. ¶¶ 9-10 (NJPLA); see also ¶¶ 13-14 (Strict Liability), 17-19 (Negligence), 22-23 (Breach of Duty of Care), 26 (Breach of Warranty).)  Underwriters claims that defendants' defective manufacture, design, or packaging of the refrigerator/freezer caused it to malfunction and release water into the home, causing extensive interior and exterior damage, and rendering it uninhabitable.  (See, e.g., Compl. ¶ 7.)  These claims are clearly encompassed by the NJPLA, and can only be prosecuted under the NJPLA.

Although recognizing that some of its claims must proceed under the NJPLA, Underwriters argues that NJPLA does not cover the homeowners' loss of the cost of the refrigerator/freezer.  Underwriters argues that this is because of the harm done to the refrigerator/freezer itself, and harm inflicted to the product itself is explicitly excluded from the NJPLA.  See  N.J.S.A. 2A:58C-1(b)(2) (covering physical damage to property, "other than to the product itself").  Underwriters also argues that the NJPLA does not cover the homeowners' loss of the use of their home due

9

to the water damage caused by the defective product.  To support their position on both points, Underwriters cites to this Court's Opinion in Kuzian v. Electrolux Home Products, Inc., --- F. Supp. 2d ---, 2013 WL 1314722, D.N.J., March 28, 2013 (NO. CIV. 12-3341 NLH/AMD).

The Court does not find Underwriters' arguments persuasive. First, Underwriters does not specify which of its claims serves as the basis for recovery for the cost of the refrigerator/freezer or for the loss of use of the house. Underwriters simply concludes that its strict liability, negligence, breach of duty of care, and implied warranty claims should all proceed because the NJPLA does not cover these losses. To be viable, however, Underwriters must explain, citing to legal authority, (1) why the NJPLA or breach of express warranty claims do not cover these losses, and (2) specifically provide a legal cause of action that would provide a remedy for those losses if the NJPLA and breach of express warranty claims cannot. Underwriters' conclusory statement that the cost of the refrigerator/freezer and the loss of the use of the home are not subsumed by the NJPLA or cannot be recovered through its breach of express warranty claims is not sufficient.

Second, Underwriters' reliance on Kuzian is misplaced.  In that case, the plaintiffs alleged that defective ice makers in their Electrolux refrigerators failed to produce ice.  They also

alleged that the ice makers leaked water into the refrigerators causing the electrical components to short out and malfunction, and caused food to spoil and damage to flooring, walls and other personal property beyond the refrigerator itself.  Instead, however, of advancing claims for the ice makers' defective design, manufacture, or inadequate warnings under the NJPLA, the Kuzian plaintiffs based their claims on Electrolux's alleged false representations regarding the ice makers' capabilities, when Electrolux allegedly knew that the ice makers could not live up to those advertised capabilities, and knew that they would malfunction.  See Kuzian, 2013 WL 1314722, at *1, *4.  Thus, this Court found that the plaintiffs' claims were not product liability claims subsumed by the NJPLA, and that Electrolux's attempt to transform plaintiffs' claims into product defect tort claims was unavailing.  Id. (citing Ford Motor Credit Company, LLC v. Mendola, 48 A.3d 366, 374 (N.J. Super. Ct. App. Div. 2012); Dean v. Barrett Homes, Inc., 8 A.3d 766, 777 (N.J. 2010)).

In contrast to the Kuzian case, all of Underwriters' damages, as pleaded by Underwriters in its complaint, are the result of an improperly designed or manufactured product, or a result of the inadequate packaging of the product.  These types of damages are expressly contemplated and subsumed by the NJPLA, no matter under what legal theories Underwriters has advanced them.  Consequently, Underwriters' claims for strict liability,

11

negligence, breach of duty of care, and breach of implied warranty must be dismissed.

### 2. Pleading sufficiency of NJPLA and Breach of Express Warranty claims

With the NJPLA and breach of express warranty claims remaining after the above analysis, the Court now turns to defendants' argument that Underwriters has failed to properly plead those claims.

Federal Civil Procedure Rule 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Even though a plaintiff is not required to plead its claims with intricate detail, Rule 8(a) and Twombly/Iqbal both require the plaintiff to provide "some specificity" as to which defendant committed what harm, and how that defendant did so. Hunter Roberts Const. Group, LLC v. J. Rihl, Inc., 2013 WL 3445331, *3 (D.N.J. 2013) (citing Twombly, 550 U.S. at 558 (insisting "upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" to an "inevitably costly and protracted discovery phase")).

Underwriters argues that it has provided sufficient notice pleading to the defendants, and that the discovery process will further flush out the particulars of its claims. With regard to

the latter part of Underwriters' argument, the discovery process cannot be used as a fishing expedition to seek out the facts necessary to establish a legally adequate complaint.  White v. Hon Co., 2013 WL 1386201, *2 (3d Cir. April 5, 2013) (citing Ranke v. Sanofi–Synthelabo Inc., 436 F.3d 197, 204 (3d Cir. 2006); Giovanelli v. D. Simmons Gen. Contracting, No. 09–1082, 2010 WL 988544, *17 (D.N.J. Mar. 15, 2010) (citing Twombly, 550 U.S. at 563 n. 8) ("Discovery . . . cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded.").

As to Underwriters' contention that it has adequately pleaded its NJPLA and breach of express warranty claims to give defendants proper notice of those claims, the Court does not agree.  Underwriters states that "on or about February 20, 2011, the U-Line refrigerator/freezer, model number U-C02175FS-01, serial number 083442-08-0041 within the residence located at 9 Grenada Lane, Ocean City, New Jersey malfunctioned and caused water to be released which caused extensive damage to the interior and exterior of the dwelling as well as the malfunction rendered the home inhabitable, which caused loss of use." (Compl. ¶ 6.)  This pleading provides sufficient notice to defendants regarding the specific product that malfunctioned, when it malfunctioned, and what damage the malfunction caused. Underwriters, however, fails to comply with Rule 8(a) when

13

specifically pleading its claims regarding the defendants' liability for that malfunction.

The primary deficiency in Underwriters' pleading is that Underwriters does not identify U-Line's or Nidec's relationship to the refrigerator/freezer.  Underwriters pleads that "U-Line and/or Nidec, manufactured, designed and/or packaged the refrigerator/freezer within the residence at 9 Grenada Lane, Ocean City, New Jersey."  Even though Underwriters might not yet know whether the refrigerator/freezer's malfunction was caused by faulty manufacturing, design, or packaging, Underwriters must at least plead, in some minimal capacity, how U-Line and Nidec are involved with this particular product.  Is U-Line the manufacturer, or did it design the product, or both?[2]  Is Nidec

---

[2]See N.J.S.A. 2A:58C-2 ("A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.").

See also N.J.S.A. 2A:58C-8 ("'Manufacturer' means (1) any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product; (2) a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale; (3) any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or (4) a United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a

responsible for those things, or, as a "motor company," did it only supply the motor used in the refrigerator/freezer? Presumably, defendants know their involvement with the refrigerator/freezer at issue, but it is Underwriters' obligation to explain to defendants the nature of Underwriters' claims against them as they are related to their involvement with the product.

Moreover, in connection with defendants' relationship to the refrigerator/freezer, Underwriters must then plead how each defendant was involved with the malfunction, even at the most basic level.[3] Lumping the two defendants together and generally claiming that these entities were involved in designing the refrigerator/freezer, manufacturing the refrigerator/freezer, or providing the packaging for the refrigerator/freezer, does not satisfy the federal court pleading requirements.

---

controlling interest in the domestic sales subsidiary."); id. ("'Product seller' means any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce.").

[3]See Worrell v. Elliott & Frantz, 799 F. Supp. 2d 343, 350 (D.N.J. 2011) (citing Myrlak v. Port Auth. of N.Y. and N.J., 723 A.2d 45, 52 (N.J. 1999)) (explaining that to plead a prima facie cause of action under the PLA, a plaintiff must show that the defendant manufactured the product, that a reasonably foreseeable user was injured, that the product was defective, that the defect existed when it left the defendant's control, and that the defect was the actual and proximate cause of the plaintiff's injury).

Underwriters' breach of express warranty claim is similarly deficient.  Underwriters simply claims that the refrigerator/freezer had a written express warranty, and that both defendants, collectively, breached the express warranty on the refrigerator/freezer.  Because, however, of Underwriters' failure to plead U-Line's or Nidec's relationship with the refrigerator/freezer, it is unclear which defendant provided an express warranty, and which defendant breached that warranty.  Relatedly, Underwriters must make some minimum efforts to articulate the basic provisions of the express warranty that defendants allegedly breached.[4]

Accordingly, Underwriters' NJPLA and breach of express warranty claims must be dismissed for insufficient pleading.  The Court, however, will afford Underwriters thirty days to file an amended complaint, should it choose to do so, consistent with this Opinion.[5]

---

[4] Plaintiff attaches a copy of the express warranty to an attorney certification in response to Defendants' motion.  In order to be properly before the Court such factual averments should be included in any amended complaint.

[5] In its brief in opposition to defendants' motions to dismiss, Underwriters requested leave to amend its complaint should the Court find it deficient.  The Court notes that except in civil rights cases, a court is not obligated to afford a plaintiff the opportunity to amend its complaint, either *sua sponte* or following the dismissal of the complaint pursuant to a motion to dismiss.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  Additionally, an amendment may only be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or

**IV.   CONCLUSION**

For the reasons expressed above, Underwriters' claims for strict liability, negligence, breach of duty of care, and breach of implied warranty are dismissed because they are subsumed by Underwriters' NJPLA claim.  The remaining two claims--the NJPLA claim and the breach of express warranty claim--are dismissed without prejudice for deficient pleading.  Underwriters is afforded thirty days to file an amended complaint.

An Order consistent with this Opinion will be entered.


Date: October 1, 2013            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

futility of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The Court finds that because none of those four factors are present here, and because Underwriters originally filed its complaint in state court where the pleading standard may be different, Underwriters will be granted leave to file an amended complaint.